No. 44,716

THE STATE OF KANSAS, *Appellee*, v. ALBERT LONZO CANTRELL, *Appellant*.

(440 P. 2d 580)

Opinion filed May 11, 1968.

*Gwinn G. Shell*, of Garnett, argued the cause and was on the brief for appellant.

*Wayne Loughridge*, county attorney, argued the cause, and *Robert C. Londerholm*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: The appellant and his accomplice, Janet Louise Weinman, were charged in separate informations with burglarizing the McCollam grocery store in Kincaid, Kansas, and committing larceny therein, at about 1:00 a. m. on the morning of February 2, 1966. At the request of the defendants and their attorneys, their cases were tried together to the same jury, and both defendants were found guilty of burglary and larceny in connection with a burglary. The district court overruled motions for a new trial for both parties. This appeal followed. The companion case is reported as *State v. Weinman*, 201 Kan. 190, 440 P. 2d 575. Mr. Gwinn G. Shell, a member of the Anderson County Bar, was appointed to prepare and present the appeal to the supreme court on behalf of the appellant.

On February 2, 1966, Ray Emmons, an agent for the Kansas Bureau of Investigation, drove into Kincaid at about 1:00 a. m. He was familiar with the town and the location of the business buildings. He observed an automobile parked at the side of the McCollam grocery store. The bank was across the street from the parked car. Emmons stopped his car in the middle of the street, turned the

lights off, and walked to the bank building to see if it was secure. Ascertaining that it was, he returned to his car. At about that time, he observed two persons walking around the corner of the McCollam store building toward the parked car which had attracted his attention. When the two persons saw Emmons, they reversed their direction and ran. Emmons called to them to halt and moved to a position where he could see the front door of the store building and the path of the flight of the two persons. Emmons fired a shot in the air and again called for the two persons to halt. They did not stop and when he last saw them, they were running into a vacant lot. As they ran from him on a brick sidewalk, Emmons observed items dropping from their persons.

Emmons kept the parked car under observation and called for additional help by radio. The sheriff of Anderson County, Agent David E. Johnson of the K. B. I. and some neighboring police officers arrived to assist him. A search of the path travelled by the fleeing persons was made. Packages and cartons of cigarettes, razor blades, bananas and other items were found on the sidewalk. A large wooden handle screwdriver and a tool called a "lock ring breaker" which resembles a pry bar and used in changing truck tires, were also found on the sidewalk and along the flight of the persons observed by Emmons.

A search of the store revealed the front door of the building had been pried open. A soft-drink vending machine with a metal front cover, had been forced open to permit access to the coin container. Cartons of cigarettes and other items were missing from the store.

There was a light cover of snow on the ground and the temperature was near zero. It was possible to locate and follow the path of the two persons in the snow. Around noon on February 2, 1966, the appellant and Miss Weinman were located hiding in a barn loft about five miles from the McCollam store and were arrested.

The officers determined by radio communication that the license tag on the automobile parked by the side of McCollam's store was a stolen Missouri license plate. The car was registered in the name of Janet Louise Weinman, the appellant's companion. Later in the day, a search warrant was obtained and the car was searched by the sheriff and the K. B. I. agents. Tools similar to those found on the sidewalk, a box of coins and currency, and other items were found and removed from the car.

The metal cover from the vending machine was processed in the K. B. I. laboratory, together with the screwdriver found on the

sidewalk by the store. An examiner from the laboratory expressed an opinion that, supported by photographs of his microscopic examination, the marks appearing on the metal cover were made by the screwdriver found at the scene.

The appellant and Miss Weinman were charged in separate complaints with burglary in the second degree and larceny in connection with a burglary. Preliminary examinations were had and both defendants were bound over for trial in the district court. On February 18, 1966, separate informations were filed in the district court in each case.

On February 28, 1966, the defendants appeared in their respective cases to reduce the appearance bond. At that time, Mr. Orville Cole, a member of the Anderson County Bar, appeared with the defendants and the bond was reduced from $10,000 for each defendant to $7,000. Thereafter, and on March 7, 1966, the defendants appeared with Mr. Cole and he was permitted to withdraw as their attorney.

On March 18, 1966, the appellant and Miss Weinman appeared in the district court with their attorney, Mr. Charles A. Elliott, Mission, Kansas, a member of the Johnson County Bar. Both defendants waived the reading of the information and entered pleas of not guilty. Each case was set for trial on the morning of May 9, 1966.

On the morning of May 9, 1966, Mr. Elliott informed the court that arrangements had not materialized for him to be employed as counsel for the defendants. Since Mr. Elliott was present, and Mr. Earle D. Jones, also a member of the Johnson County Bar, was present in court, the court appointed Mr. Elliott to represent the appellant and appointed Mr. Jones to represent Miss Weinman. As indicated, both the defendants and their attorneys requested in open court that they be tried together.

At the trial all the items taken from Miss Weinman's car upon the search warrant were identified by the officers and some of them were admitted in evidence. Through oversight, other items taken from the car were not offered until after the state rested its case. When offered at that time, the district court refused to admit them over the objection of counsel for the defendants since they were not afforded an opportunity to cross-examine the witnesses.

The appellant and Miss Weinman both testified they left Kansas City enroute to Miami, Oklahoma, to get married, and they described the route taken from Kansas City to Kincaid. They testi-

fied they had parked their car to look for a telephone when it was discovered by Agent Emmons, and that they thought Emmons was the ex-husband of Miss Weinman who was attempting to kill them—that explanation was not offered to the police officers at the time of their arrest.

The appellant principally contends he did not have a fair trial since witnesses for the state made "repeated reference" to his "record" during the two-day trial, when he had not introduced evidence tending to prove a trait of his character, or for the purpose of supporting his credibility. He argues the district court erred in failing to declare a mistrial, and to grant a new trial when the matter was presented.

The point is presented in the record as follows: After the appellant and Miss Weinman were arrested they were interrogated separately by the K. B. I. agents. Emmons and Johnson interviewed the appellant together and they advised him he did not have to make any statement if he did not want to; that anything he might say could be used against him in court, and that he had the right to have an attorney of his own choice present to advise him prior to making any statement.

The first reference to the appellant's "record" occurred at the first day of the trial when Emmons testified the only statement the appellant made was, "[h]e gave us his record, and name and address, description . . . that's all." No objection was made to the testimony and no attention was given it by anyone until the next day when Johnson started to relate the interview with the appellant. He testified the appellant stated his name and address. Thereupon, the court declared a recess and asked the defendants and their counsel, the county attorney, and Johnson to come to his chambers. The court instructed the county attorney to advise Johnson he should not refer to the appellant's "record" in any respect, meaning his criminal record.

The second reference to the "record" was made when the trial resumed and Johnson continued with his testimony. He testified he first identified himself to Miss Weinman and talked to her; that he advised her she would probably be charged with burglary; that she did not have to make a statement if she did not care to; that any statement she made could be used against her in court, and that she was entitled to have an attorney of her own choice present if she so desired before making any statement. He testified that Miss Weinman stated the parked car was her automobile; that she and

the appellant left Kansas City about 9:00 or 10:00 o'clock, and she described the route of their travel. He questioned her concerning the McCollam store and asked her why "she burglarized that store." Counsel for the appellant objected upon the ground the appellant was not present when the conversation took place and the evidence was inadmissible against him. The court stated:

". . . I will instruct the jury that any testimony or any statement made or evidence of any statement made by Miss Weinman in the absence of Mr. Cantrell would not be admissible as to the issues regarding him and would not be binding on him. . . ."

Agent Johnson further testified Miss Weinman stated she did not break in the store; that when she went in, the door was open, and that she carried bananas and cigarettes out of the store.

Counsel for Miss Weinman vigorously cross-examined Johnson on the matter of burglary tools, and why he considered a tire tool found in her car to be a burglary tool. Johnson stated it was similar to the one found near the store, and could be used to pry. When asked to explain why he did not consider such a tool in his automobile a burglary tool, he repeated several times that circumstances make the difference, and, when pressed again on the point, he stated he was of the opinion that a tool which had a legitimate use could be classified differently if it were obtained "from a vehicle which had contained someone with a prior record." Counsel for Miss Weinman moved for a mistrial and speaking of the witness, stated, "[h]e has been advised on the record in chambers." The court overruled the motion and instructed the jury to disregard the answer.

The third reference to the appellant's "record" occurred when the county attorney was cross-examining him as follows:

"Q. Mr. Cantrell, how many times have you been convicted of a felony?

"MR. ELLIOTT: I object to that, your Honor. It's highly prejudicial to my client.

"THE COURT: I will sustain . . .

"MR. JONES: I don't know that, under 60-455 he can't even ask that question.

"THE COURT: I will sustain the objection and direct the jury to disregard that question."

We are of the opinion the reference to the appellant's "record" did not constitute reversible error. There was no evidence before the jury what Emmons and Johnson meant when they referred to the appellant's "record." However, assuming the jury was led to believe that the K. B. I. agents' reference to "record" was intended to mean the appellant's prior criminal record, no objection was made

by counsel for the appellant when Emmons referred to his "record." (K. S. A. 60-404.) This court has adhered to the rule prescribed in the statute, and consistently held that objections to the admissibility of evidence will not for the first time be considered on appeal in the absence of timely objection made thereto. (*State v. Freeman,* 195 Kan. 561, 564, 408 P. 2d 612, Cert. den. 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981; *Grohusky v. Atlas Assurance Co.,* 195 Kan. 626, 629, 408 P. 2d 697; *State v. Jolly,* 196 Kan. 56, 58, 410 P. 2d 267; *State v. Donahue,* 197 Kan. 317, 320, 416 P. 2d 287.)

Likewise, it is evident that Johnson's reference to the appellant's "record" was induced by counsel for the appellant's accomplice. Whether Johnson's opinion that tools which had a legitimate use could be classified differently if possessed by someone with a "prior record" was a valid distinction, is not important. It was a distinction the witness made in his own mind and when pressed to express himself, he used that distinction. In *State v. Hart,* 200 Kan. 153, 434 P. 2d 999, it was held that it was not necessary that an instrument be particularly designated or constructed for the purpose of breaking into buildings for it to come within the ban of K. S. A. 21-2437, enacted to minimize the incidents of burglary, but was sufficient if it be commonly used for such purpose and if it was possessed with that purpose in mind. See, also, *State v. Jerrel,* 200 Kan. 415, 436 P. 2d 973, where the same rule was applied. Johnson explained what he considered to be his predicament when he stated he "tried to stay away from it . . . but you kept asking me." As indicated, counsel's persistent questioning induced the witness to use the words "prior record," and the error, if any, was his own making. One who by his own act invites error, cannot complain of it or take advantage of the court's ruling. Moreover, there is nothing in the record to indicate that counsel for the appellant made objection to the reference, and it is too late to be considered for the first time on appeal.

With respect to the third reference, the county attorney was not authorized on cross-examination to inquire of the appellant whether he had previously been convicted of a felony. When the accused in a criminal proceeding takes the witness stand in his own behalf, evidence of a prior conviction is inadmissible for the sole purpose of impairing his credibility unless he first introduces evidence admissible solely for the purpose of supporting his credibility. (*State v. Motley,* 199 Kan. 335, 430 P. 2d 264.) In *State v. Roth,* 200 Kan. 677, 438 P. 2d 58, the second paragraph of the syllabus in *State v.*

*McCorvey,* 199 Kan. 194, 428 P. 2d 762, was overruled, and it was said:

> "The statute, passed for the purpose of encouraging the accused to testify, put an end to the promiscuous cross-examination as to previous convictions. The prosecution must observe the rules of cross-examination and if evidence of previous convictions is desired it must be by direct presentation, unless the accused makes reference to the matter in his direct testimony. Any other approach would destroy the intent and purpose of K. S. A. 60-421." (1. c. 682.)

As indicated, the district court sustained counsel's objection to the question about which complaint is made and instructed the jury to disregard it. We think no prejudice resulted.

The appellant contends the statements made by Miss Weinman to Agent Johnson were inadmissible because she did not have counsel when the statements were made. He refers to *Mempa v. Rhay,* 389 U. S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254. The case is not in point and it is unnecessary to discuss it since that was done in *State v. Weinman,* supra. Moreover, Miss Weinman was afforded opportunity to have counsel present and the fact that counsel was not present does not render her statements inadmissible when, as they were, voluntarily made. (*State v. Jenkins,* 197 Kan. 651, 421 P. 2d 33.)

The appellant contends he was linked to Miss Weinman by hearsay evidence developed in Johnson's testimony as to statements she made to Johnson out of the appellant's presence, which were admitted over his objection. The testimony was hearsay evidence as to the appellant and was inadmissible against him, however, having requested to be tried jointly with the appellant and being a party to the action, Miss Weinman's statements were admissible as to the issues pertaining to her. (K. S. A. 60-460 [g].) The proper remedy of an accused person such as the appellant, where certain evidence is admissible as to other defendants but not as to the accused yet tends to incriminate him, is to request the court to limit the jury's consideration of such evidence to the particular party against whom it is properly admitted. Whether prejudice results from the introduction of a statement or declaration implicating another defendant on a joint trial can be nullified by proper instructions to the jury, is a question for the trial judge to determine in the exercise of sound judicial discretion. (23 C. J. S., Criminal Law, § 1032 [4], p. 1144.) It is not contended the district court abused its discretion in that respect, and the court instructed the jury at the time the evidence

came in that it was inadmissible as to issues regarding the appellant and would not be binding on him.

At the close of the evidence, the court instructed the jury that the issues involved in the two cases were to be considered separately and testimony regarding any statements by Miss Weinman relating to her activities was not admissible in the appellant's case and could not be considered in determining his guilt or innocence. It further instructed the jury that it was to give no consideration to nor draw any inferences from any questions propounded by counsel to which the court had sustained objections or to any answers of witnesses which the court ordered stricken from the record.

We have examined the authorities cited by the appellant and they are not applicable to the facts and issues presented. Both the appellant and Miss Weinman and their counsel requested they be tried together, that is, both defendants put their eggs in one basket, so to speak. The district court correctly instructed the jury as to all the relevant issues involved in the joint trial and we cannot say the appellant did not have a fair trial.

The judgment of the district court is affirmed.