Albert Lonzo **CANTRELL**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

Misc. No. 614.

United States Court of Appeals
Eighth Circuit.

July 25, 1969.

Rehearing Denied Aug. 19, 1969.

Before BLACKMUN and BRIGHT, Circuit Judges.

## PER CURIAM.

Albert Lonzo Cantrell seeks leave to appeal in forma pauperis from the denial, without a hearing, by Senior District Judge Duncan of his third petition under 28 U.S.C. § 2255 to vacate his sentences. Except for the possible application of very recent United States Supreme Court cases, the matter is repetitious and borders on the frivolous. Nevertheless, we have examined the situation carefully.

The record discloses the following:

1. On July 25, 1966, in the Western District of Missouri, Cantrell, with retained counsel experienced in the criminal law, waived indictment and pleaded guilty to a one-count information charging him with a violation of 18 U.S.C. § 641 (concealment and retention of government property, consisting of United States postage and migratory bird stamps, of a value exceeding $100). At this arraignment Cantrell personally acknowledged that no one had threatened him or promised any reward, that he understood his rights and the charge against him, and that he was pleading guilty because he was in fact guilty.

2. On September 12, 1966, Cantrell, again with the same retained counsel, pleaded guilty to both counts of a two-count indictment transferred under Rule 20, Fed. R. Crim. P., to the Western District of Missouri from the Northern District of Iowa, respectively charging him with violations of 18 U.S.C. § 2115 (forcible entry of a post-office building with intent to commit larceny) and of 18 U.S.C. § 1707 (theft of postal property of a value exceeding $100). All three charges against Cantrell arose from the same set of events. At this arraignment, in response to questions by the court, Cantrell personally stated that no promises had been made and, specifically, that no promises had been made to him that by entering a plea of guilty his sentence would likely be less than otherwise. He also again acknowledged that he was pleading guilty because he was guilty "and without any reservations, promises or threats of any kind."

3. After the acceptance of these additional pleas, Judge Duncan imposed upon Cantrell sentences of 10 years, 5 years, and 3 years on the three respective counts and directed that the sentences were to run concurrently. The court recommended to the Attorney General that the place of confinement be the Kansas state penitentiary at Lansing so that the federal sentences could run concurrently with a Kansas sentence Cantrell had incurred. See State v. Cantrell, 201 Kan. 182, 440 P.2d 580 (1968), cert. denied, 393 U.S. 944, 89 S.Ct. 315, 21 L.Ed.2d 282.

4. In August 1967 Cantrell moved, under 28 U.S.C. § 2255, to vacate his sentences. He contended (a) that his pleas of guilty were induced by promises of leniency; (b) that his attorney had advised him to plead guilty or his bondsman would have to pay off his bond; (c) that another attorney had advised him to withdraw his plea of guilty if he received a sentence of more than 5 years, but his counsel failed to do this; and (d) that a postal inspector told him that if he pleaded guilty all but one charge would be dismissed and he would receive not more than 5 years.

5. The motion was set for hearing, and Judge Duncan held the hearing in due course. Cantrell was present and testified in line with his contentions. The court also received testimony from the postal inspector and from Cantrell's attorneys. The inspector denied making any promises to Cantrell. On December 4, 1967, the court issued its order denying Cantrell's motion and reciting, "After hearing the testimony we are convinced that there is absolutely no sub-

stance in the petitioner's contention that any promises were made to him. He does not deny his guilt." Leave to proceed on appeal in forma pauperis was denied by the district court.

6. On January 12, 1968, this court also denied Cantrell leave to appeal in forma pauperis on the ground that his application so to do was legally frivolous (Misc. No. 508).

7. On February 26, 1968, Cantrell filed his second § 2255 motion. This was denied on April 15. The district court again denied leave to proceed on appeal in forma pauperis. On June 4, 1968, this court similarly ruled (Misc. No. 538). Certiorari was denied. Cantrell v. United States, 393 U.S. 970, 89 S.Ct. 410, 21 L.Ed.2d 383 (1968).

8. On March 12, 1969, Cantrell's present and third § 2255 motion was filed. On April 1 Judge Duncan denied that application for relief. In his order he recited that the only matter not alleged and determined by the court in the 1967 proceeding was Cantrell's allegation,

> "Petitioner was unaware of the effect of Rule (20) being a waiver of illigal search and seizure of 4th Amed. of Fed. Const. and counsel never informed Petitioner."

The court ruled that the record reveals "that all of the petitioner's rights were fully explained to him not only by the court, but by the District Attorney and he fully understood them," and that "[w]hether he did or did not seems to us makes no difference at this time because the sentences imposed upon him under Rule 20 were made to run concurrently with the sentence imposed upon him under the information filed in this court."

9. On April 16, 1969, and again on April 28, Cantrell filed a supplementary paper. The first is obviously repetitious of prior allegations. The second asserts that McCarthy v. United States, 394 U. S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), is supportive of his cause. The district court overruled both these sup-

plemental applications. On June 2, 1969, the court denied Cantrell's "Motion for a Certificate of Probable Cause" and his motion to proceed in forma pauperis as being "wholly without merit, frivolous, and therefore not taken in good faith." 28 U.S.C. § 1915(a).

10. On June 20 Cantrell filed papers seeking relief here. We treat these as a motion for leave to appeal in forma pauperis from the denial of his current § 2255 motion. He asserts coercion in the entry of his pleas of guilty, "inadequate and ineffective assistance of counsel", the McCarthy precedent, and the denial of the right of review.

It is to be noted initially that, by his search and seizure allegation, Cantrell attacks neither his Kansas sentence nor his 10-year federal sentence imposed on his plea of guilty to the charge under 18 U.S.C. § 641. Thus the "new" material conjured up for his current petition bears on only the lesser 5- and 3-year sentences.

We deny the requested leave because:

 1. The allegations and issues as to the making of promises in return for guilty pleas and as to the inadequacy and ineffectiveness of counsel (which are directed to the entry of those pleas) were presented in the 1967 § 2255 proceeding and, after a full hearing at which Cantrell and others testified, were ruled adversely to him. Section 2255 reads:

> "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

The district court's denial of a repetitious hearing on the same complaints as previously had been heard is well within its discretion and does not constitute error. Sanders v. United States, 373 U.S. 1, 15–17, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Wheeler v. United States, 404 F.2d 252, 253 (8 Cir. 1968).

 2. The only matter in the current motion which conceivably was not alleged and heard in the 1967 proceeding is, as Judge Duncan pointed out, Can-

trell's claim of unawareness that, by consenting to a Rule 20 transfer and entering the pleas of guilty required under the rule, he was waiving any defense based upon illegal search and seizure. But this claim is specifically directed only to the two shorter sentences made to run concurrently with the 10-year sentence imposed on the information count under 18 U.S.C. § 641 and not at all to that longer sentence.

3. This case has striking similarity to Peters v. United States, 312 F.2d 481 (8 Cir. 1963). There, too, we had repetitious applications for relief; the claim that there was an illegal search and seizure; and an assertion that the petitioner's plea of guilty was induced by a representation by the prosecutor as to the length of sentence to be imposed. We dismissed that appeal on the ground, among others, of frivolity.

4. It is still the law that a plea of guilty, knowingly and understandably made, waives all non-jurisdictional defects and defenses and equates with an admission of guilt. Peoples v. United States, 412 F.2d 5, 7 (8 Cir. 1969); Hughes v. United States, 371 F.2d 694, 696 (8 Cir. 1967); Davis v. United States, 392 F.2d 291 (10 Cir. 1968), cert. denied, 393 U.S. 986, 89 S.Ct. 461, 21 L.Ed.2d 447.

5. Cantrell was represented at his arraignments by competent retained counsel of experience in the criminal law. He has alleged nothing indicating that his plea was other than a considered one made upon the advice of counsel acquainted with the well-known holding in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), decided some six years before. Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation. Williams v. Beto, 354 F.2d 698 (5 Cir. 1965). There is nothing here which begins to approach the standard that a claim of inadequacy of representation may be upheld only where it can be said that the proceedings are a mockery and shocking to the conscience of the court. Kress v. United States, 411 F.2d 16 (8 Cir. 1969). The question of adequate representation was a general issue in the 1967 proceeding, and we are not sympathetic to a repetitious attempt to relitigate that issue because of an allegation of a new and mere detail in that representation.

6. We cannot hold that a sentencing court, in passing upon the voluntariness of a plea, must make inquiry as to the possible background existence of a search and seizure issue or of a confession issue or of every other factor which conceivably might be considered in the defense were trial to take place. That is for the defendant and his counsel, not the court, to explore.

7. In the parallel situation of a confession, where a defendant seeks to have his sentence vacated on the ground that he would not have pleaded guilty had he been aware that the confession was not admissible in evidence, the courts, including this one, have ruled that this does not render the guilty plea involuntary where the defendant has been informed of the charge against him, of the possible penalties, and of his rights at the time of entering his plea. Hall v. United States, 259 F.2d 430, 431 (8 Cir. 1958), cert. denied, 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680; United States v. Wagner, 309 F.2d 7, 8 (6 Cir. 1962); United States v. French, 274 F.2d 297 (7 Cir. 1960); Snipe v. United States, 343 F.2d 25, 28 n. 5 (9 Cir. 1965), cert. denied, 382 U.S. 960, 86 S.Ct. 440, 15 L.Ed.2d 363; Semet v. United States, 369 F.2d 90, 92 (10 Cir. 1966). See United States v. Miller, 293 F.2d 697, 698 (2 Cir. 1961).

8. There is nothing in McCarthy v. United States, supra, which is of any conceivable benefit to Cantrell. At his arraignments Cantrell was personally addressed and was given, and accepted, the opportunity to make statements. Furthermore, the *McCarthy* rul-

ing applies only to defendants whose guilty pleas are accepted after April 2, 1969. Halliday v. United States, 394 U. S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).

9. Neither do we see anything of substantial comfort to Cantrell in the recent decision in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Supreme Court there discussed the so-called "concurrent sentence doctrine" in the particular context of jurisdiction and direct appeal. It acknowledged, p. 791, "The concurrent sentence rule may have some continuing validity as a rule of judicial convenience," but observed, "That is not a subject we must canvass today, however." And footnote 11 of that opinion reads:

"A stronger case for total abolition of the concurrent sentence doctrine may well be made in cases on direct appeal, as compared to convictions attacked collaterally by suits for postconviction relief. Because of our disposition of this case, we need not reach this question."

10. After self-conviction by a guilty plea, no judge can evaluate what the outcome would have been had the plea been otherwise, had a trial taken place, and had an evidentiary issue been raised and decided. A motion to suppress might or might not have been well founded. The evidence in question might or might not have been the difference between conviction and acquittal. It takes far more, we feel, than a mere assertion that a search and seizure issue is present which might have been raised, and which, if raised, might have been decided in the petitioner's favor, and which, if so decided, might have resulted in an acquittal. These are the very kinds of considerations which enter into the decision, by the defendant and counsel, whether to plead guilty or not guilty. Once the plea is entered, its natural consequences ensue. One does not deserve both the choice of plea and the advantage of hindsight.

All in all, Cantrell's present petition obviously rests upon the wishful thinking of what he imagines might have been.

The relief requested is denied.