No. 49,347

STATE OF KANSAS, *Appellee,* v. KENNETH CROSS, *Appellant.*

(576 P.2d 698)

Opinion filed April 1, 1978.

*David W. Boal,* of Carson, Fields and Boal, of Kansas City, argued the cause and was on the brief for appellant.

*Nick A. Tomasic,* district attorney, argued the cause and *Curt T. Schneider,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is a direct appeal from a jury verdict finding the defendant guilty of first degree murder under the felony murder rule. (K.S.A. 21-3401.)

In the early morning hours of January 13, 1977, defendant, a 16-year-old minor, and Richard Perez, age 18, burglarized a tavern in Kansas City. They gained access to the building by removing a window air conditioner and entering through the resulting opening; broke into the jukebox, pool table, cigarette machine and cash register; took money and cigarettes out of the machines, drank beer and ate potato chips. Upon leaving, the two youths gained access in the same manner to a refrigeration shop located next door to the tavern. After being in the shop for some time they came across an elderly man sleeping on a cot in a back room. Richard Perez testified he and defendant went outside, talked it over and decided to go back in, beat the man and rob him. According to Perez, the defendant was to hit the man in the head with a table leg picked up off the floor, but once back inside, defendant said he couldn't hit the man. Perez admits striking the first blows but claims defendant also struck the victim a number of blows. The man died from multiple blows to the head.

When the victim stopped struggling, Richard Perez searched him and found fifty-two cents. Perez and defendant then went to a friend's house and split the money taken from the deceased and the tavern with each youth receiving approximately ten to twenty dollars.

Defendant also took the stand and told much the same story except he testified that at no time did he strike the victim on the head. He claims the victim grabbed Perez as Perez was striking him and defendant only struck the victim on the arms in an attempt to free Perez.

On February 3, 1977, defendant was being held in the Wyandotte County juvenile annex on an auto theft charge, which also involved Richard Perez. While in custody, defendant indicated he wanted to talk with Clyde Blood, an officer with the Kansas City Police Department Youth Bureau. Defendant told Sgt. Blood that he had witnessed a homicide of an old man at a refrigeration shop and asked Sgt. Blood if he could help him. Blood advised defendant of his rights and then asked to what extent he was involved. Defendant replied, "Well, I was there and I saw it. Can you help me?" Sgt. Blood immediately contacted the district attorney and defendant's parents "because I felt under the circumstances they should be there to advise him and decide which way they would want to go regarding the legal aspects of the case." There was no further questioning of defendant at that time.

When defendant's parents arrived, the *Miranda* warning was read to defendant and his father simultaneously. A written *Miranda Waiver* was signed by defendant and his father. A statement was then taken from defendant in the presence of his parents and the statement, after being transcribed, was signed by defendant and his father.

Defendant was certified by the juvenile court to stand trial as an adult and both defendant and Perez were charged with first degree murder under the felony murder theory. Richard Perez, after a preliminary hearing, pled guilty to murder in the first degree and subsequently testified for the state at defendant's trial.

In his first point on appeal, defendant contends the trial court erred in refusing to suppress his statement given at a time when defendant was a minor and in custody. Defendant argues the statement was taken in violation of K.S.A. 38-839, which provides in part:

"When any child under the age of eighteen (18) years has been taken into custody by a law enforcement official, and such child *indicates in any manner* and at any stage of the process that he wishes to consult with an attorney before speaking, he shall not be questioned until he has had an opportunity to consult with retained or appointed counsel. . . ." (Emphasis added.)

The factual circumstances upon which defendant relies were brought out during testimony at a pretrial suppression hearing.

During cross-examination of Sgt. Blood, the following dialogue occurred:

"Q. He told you he felt like he needed some help?

"A. Yes, sir, he did.

"Q. All right. Did he tell you anything else?

"A. Not at that time.

"Q. Okay, so he told you at that time that he had seen a serious crime, it made him sick and he needed help?

"A. Yes, sir.

"Q. All right. Did you proceed under the assumption that he had come to you for help?

"A. Yes, at that time I asked him what was the nature of the incident that he had observed and what type of help he felt he needed.

"Q. Did he tell you what type of help he felt he needed?

"A. Well, he said at that time that he had witnessed a homicide and he wasn't sure where he stood legally, whether he would be charged with a homicide or be a witness.

"Q. So he had—obviously, in your mind or from what you observed and heard, he had legal questions?

"A. He did at that time, right.

"Q. All right. And in response to this, you called Kenny's parents?

"A. We did."

Defendant concedes that he did not ask Sgt. Blood to get him an attorney, however he contends that the conversation with Sgt. Blood constitutes an unmistakable indication of his recognized need and desire for counsel as contemplated by the statute. Assuming that the conversation between the defendant and Sgt. Blood could be considered a request for counsel under K.S.A. 38-839, was the subsequent taking of defendant's statement a violation of the statute? We think not.

The starting point for an analysis of the constitutional rights of juveniles is *In Re Gault,* 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428 (1967), where the United States Supreme Court held that in juvenile proceedings minors were entitled to the benefit of certain constitutional rights previously accorded only to adults in criminal proceedings. In *Gault* the court held certain Bill of Rights safeguards, including notice, the right to counsel, and the right to confrontation guaranteed by the Sixth Amendment, along with the right against self-incrimination guaranteed by the Fifth Amendment, apply to protect a juvenile accused in a juvenile court on a charge which may lead to commitment to a state institution.

A confession is not inadmissible merely because the person making it is a juvenile. *State v. Young,* 220 Kan. 541, 552 P.2d 905 (1976); *State v. Hinkle,* 206 Kan. 472, 479 P.2d 841 (1971). See also Annot., "Voluntariness and Admissibility of Minor's Confession," 87 A.L.R.2d 624 (1963). This court has also said that a determination of whether a confession of a juvenile was freely and voluntarily given is to be based upon a consideration of the totality of the circumstances. *State v. Young,* supra.

". . . The age of the juvenile, the length of the questioning, the juvenile's education, the juvenile's prior experience with the police, and the juvenile's mental state are all factors to be considered in determining the voluntariness and admissibility of a juvenile's confession into evidence." *Id.,* Syl. ¶ 2.

Confessions or admissions voluntarily made are not inadmissible because made at a time when the accused in a criminal action did not have counsel. *State v. Johnson,* 223 Kan. 237, 573 P.2d 994 (1977); *State v. Hinkle,* supra; *State v. Weinman,* 201 Kan. 190, 440 P.2d 575 (1968).

We have examined the entire record applying the criteria set forth in *Young.* The trial court, after a lengthy suppression hearing, found defendant's statement was voluntarily given:

"May 26, 1977

"Mr. David W. Boal                    Mr. Nick A. Tomasic
Attorney at Law                       District Attorney
302 Brotherhood Building              Wyandotte County Courthouse
Kansas City, Kansas 66101             Kansas City, Kansas 66101

Re:   State v. Cross, No. 77-CR-0164 'A'

"Gentlemen:

"Defendant's motion to suppress the statement which the defendant gave to members of the Kansas City, Kansas, Police Department was argued to the Court yesterday afternoon and was taken under advisement.

"It is the function of the Court to make a preliminary determination as to whether a confession has been freely and voluntarily made, without force or coercion being used, and then if the Court finds that it has been freely and voluntarily made, to allow the confession in evidence to be considered by the jury under proper instruction.

"Based on a totality of the evidence which I heard yesterday, and taking into account the factors which the Supreme Court says in the Young case are to be considered, I do find that the State's Exhibit No. 2 is proper for the jury to consider, and the motion to suppress it is denied.

"In making this ruling, I place particular emphasis on the fact that Cross set in motion the events leading up to the signing of the statement by asking to see Clyde Blood; the fact that Mr. and Mrs. Cross were present before any questioning commenced, and the total lack of even a suggestion that there was coercion or

intimidation of any kind. I do not believe that K.S.A. 38-839 has been violated.

Yours very truly,
(Signed) O.Q. Claflin
O.Q. Claflin III
Judge, Division 1"

We concur in the trial court's finding.

The defendant's other points on appeal are that the trial court erred in its instruction on aiding and abetting and in the instruction setting forth the elements of the crime charged. We have examined the record and find no error in the instructions as given.

The judgment is affirmed.