UNITED STATES of America, Plaintiff,

v.

Daniel Jack WENZEL and Gary Wayne Marshe, Defendants.

No. CR–R–80–23–ECR.

United States District Court,
D. Nevada.

Sept. 19, 1980.

---

B. Mahlon Brown, U. S. Atty., Phillip M. Pro, Asst. U. S. Atty., Reno, Nev., for plaintiff.

Lawrence J. Semenza, Belford & Semenza, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Counsel for defendant Gary Wayne Marshe has moved the Court for a judicial determination of his mental competency to stand trial. The basis for the motion is a claim that said defendant is not competent to understand the proceedings against him or properly assist his attorney in his own defense.

A competency hearing has been held and the Court has received the testimony of two expert psychiatrists, Dr. Paul Miller for defendant and Dr. Lynn Gerow, Jr., for the Government.

The evidence indicates that the defendant has only a third or fourth grade ability to read, write and do arithmetic.

Testimony of Dr. Miller indicated a belief on his part that the defendant suffers a disability in the left hemisphere of his brain and that this is due to a genetic or biological developmental defect. In other words, in his view it is not due to any mental disorder, but rather it is a physical defect. Dr. Miller does not find that defendant is mentally retarded in a general sense, but only in the specific areas of reading, writing and arithmetic and finds him to be in the range of mild retardation. Defendant's counsel therefore argues that the defendant is for these reasons mentally incompetent and unable to understand the proceedings against him or properly assist in preparing his defense.

In the view of the Court the exact reason for defendant's problems in reading, writing and arithmetic are uncertain. While defendant's expert witness claimed this was probably due to a genetic defect, it does not appear to the Court that there has been an adequate study to reach this conclusion. The fact that defendant's parents had difficulty in reading and writing and that another child of the family had similar problems is based solely upon statements by defendant's mother to the doctor. There were no tests or investigations made which in the Court's view would be a persuasive basis to claim defendant inherited these problems.

It is admitted and established that defendant simply has not acquired the ability to perform reading, writing and arithmetic beyond very elemental levels. His I.Q. in these three fields is somewhere between 55 and 60. However, when tested on a broader basis in respect to not only these particular skills but as to other mental skills and abilities, defendant obtained a score of 88 on the Wechsler test which would place him just short of the normal 90–110 range.

When questioned by the defense psychiatrist the defendant indicated that he knew that what he did was against the law and wrong, but he was not able to explain to the doctor's satisfaction why it was wrong. Defendant, in the view of the doctor, is unable to conceptualize or to think in abstract terms. But the government psychiatrist counters that many talented high school students studied are unable to do full abstract thinking.

The witnesses are in disagreement as to the fund of general information which defendant has but it does not appear that he has any great general fund of information and probably only retains information in a lower range.

Defendant did have a pretty good recollection of the occurrences on the day of the alleged offense but in other testing demonstrated that his short–term memory was below average. Defendant was able to discuss the crime of distributing L.S.D. He said he had tried it once and that it made him sick, lethargic and confused. He knew people got high on it. Defendant recalls to the psychiatrists that at or about the time of the alleged offense he had in his possession quantities of marijuana and L.S.D. which he intended to sell. He states that his friend turned him in to the narcotics officers so that when he endeavored to make a sale of the narcotics it turned out to be to a narcotics officer. Defendant remembers that this occurred on his birthday and commented to one of the psychiatrists "nice birthday present". He recalls on the day of the crime he had two beers and no drugs. He said his motive in selling L.S.D. was to earn money to go to trade school. He also knew he might be charged with a crime for using the telephone in connection with sale of narcotics.

The question faced by the Court is whether a person in defendant Marshe's position is competent to stand trial.

Defendant told the government psychiatrist that he understood the reason for the psychiatric examinations, i. e., to assist in his defense. Defendant denies having any sort of mental defect and is offended and unhappy at such a suggestion. He indicated that he wished to plead guilty but that he was going to follow his attorney's advice, having ascertained that he might be subject to a lengthy jail sentence if convicted.

■ Based on the record before the Court it seems quite clear that the defendant, at least in terms that most people can understand, is able to understand the proceedings against him. He knows he is charged with a crime and understands that he has options of pleading not guilty or guilty. While the defendant may not be able to explain in any depth the allegations against him, he does appear to understand what is occurring as well as many people can.

Defendant does appear to understand in a factual as well as rational manner what these legal proceedings are and what the charges are against him. There is no reason to believe he is unable to assist in his defense as well as most laymen functioning perhaps on the lower range of the I.Q. scale. He thus meets the standard by which competency to stand trial is measured in this circuit. *See United States v. Glover*, 596 F.2d 857, 867 (9th Cir. 1979). He can only read, write and do arithmetic on a third to fourth grade level but, all in all, his intelligence is just under the middle, so–called normal range. It does not necessarily follow from his deficiencies in reading, writing and arithmetic that his level of intelligence is so low that he is not competent for these proceedings. *See United States v. Reed*, 285 F.Supp. 738 at 742 (D.C.D.C.1968).

■ No doubt there is a level of mental retardation which would make a defendant so mentally incompetent that it could be assumed that he would be unable to understand the proceedings against him or properly assist in his own defense. But based on this record it must be concluded that the extent to which defendant suffers mental retardation does not reach that level. *See Butler v. United States*, 384 F.2d 522 (8th Cir. 1967) (presence of some degree of mental illness does not equate with incompetency to stand trial). It simply does not follow that because a person has only a third to fourth grade ability in reading, writing and arithmetic, or that he is unable to think abstractly when faced with proverbs, that he will be unable to understand the nature of the proceedings against him or to assist in his own defense.

The Court therefore finds and adjudges that the defendant Marshe is competent to stand trial.